3:26-mj-00231

DISTRICT OF OREGON: ss, AFFIDAVIT OF LEXIE WIDMER

**Affidavit in Support of a Criminal Complaint**

I, Lexie Widmer, being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1. I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since June 2025. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) and I am authorized by law to conduct investigations and to make arrests for felony offenses. I am currently assigned to the Assistant Special Agent in Charge, Portland, Oregon. Prior to this, I was employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) from 2017-2022, and as a Mesa, Arizona, police officer from 2023-June 2025. I am authorized and assigned to investigate violations of federal laws, including 18 U.S.C. § 545, that covers smuggling, and 21 U.S.C. §§ 841(a)(1), 846, 848, 843(b), and 952(a) of the Drug Abuse Prevention and Control Act of 1970, that is, possession with intent to distribute and the distribution of controlled substances, conspiracy to commit such offenses, the operation of a continuing criminal enterprise, and the use of a communication facility to facilitate a felony violation of the Drug Abuse Prevention and Control Act of 1970, and the illegal importation of a controlled substance. During my tenure as a federal law enforcement officer, I have investigated and/or participated in investigations of narcotics trafficking and firearms violations. I have also acquired knowledge and information about the illegal drug trade and the various means and methods by which it is furthered including using computers, smart phones, digital media and the Internet from formal and informal training, other law enforcement officers and investigators, informants, individuals I have arrested and/or

interviewed, and from my participation in other investigations. I am currently detailed to the High Intensity Drug Trafficking Area (HIDTA) Interdiction Taskforce (HIT) located at the Portland Police Bureau's Narcotics and Organized Crime unit.

2. This affidavit is based upon a joint investigation conducted by PPB patrol officers, PPB Narcotics and Organized Crime (NOC), Homeland Security Investigations (HSI), and the HIDTA Interdiction Task Force (HIT), a task force comprised of local, state, and federal law enforcement agencies (hereinafter collectively referred to as "investigators").

**Purpose of Affidavit**

3. This affidavit is submitted to support a criminal complaint and arrest warrant for the following individual:

- **James Victor SMITH,** date of birth xx/xx/1980, a male (hereinafter referenced as "**SMITH**");

for committing the crimes of Possession with Intent to Distribute Methamphetamine (500 grams or more of a mixture or substance containing a detectable amount of methamphetamine), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i); and Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g)(1).

4. I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral reports of other law enforcement officers; and, from records, documents and other evidence obtained during this investigation. I have obtained and read official reports prepared by law enforcement officers participating in this

investigation. I have not included all information learned through this investigation. I have included information I believe is sufficient to establish probable cause for the criminal complaint and arrest warrant requested by this affidavit.

## Applicable Law

5. 21 U.S.C § 841(a)(1) makes it unlawful for any person to knowingly or intentionally possess with intent to distribute a controlled substance.

6. 18 U.S.C. § 924(c)(1)(A)(i) makes it unlawful for any person to knowingly possess a firearm in furtherance of a drug trafficking crime.

7. 18 U.S.C. § 922(g)(1) makes it unlawful for a felon, who is aware that he or she is a felon, to knowingly possess a firearm, which has been shipped or transported in interstate or foreign commerce."

## Summary of Probable Cause

8. On August 18, 2026, at approximately 9:50 A.M., PPB officers responded to a premise check call for service at an address on N Johnswood Dr, Portland, Oregon (hereinafter "Subject Location"). Call notes stated, PI PREV, XIENTS STILL THERE THIS MORNING, HAVE BEEN COMING IN AND OUT OF THE SHED AT PROP. HAVE ALSO TORN DOWN PART OF THE SHARED FENCE, AND HU UP BLANKETS+TOWELS THAT OVERLAP ONTO CMP'S PROP. #1 UNK RACE POSS FEM, DK HAIR, PLAID SHRT, #2 WM, DK SHRT, NO WEAPS SEEN.

9. While enroute to the call, Ofc. Hills spoke with the complainant, who lived next door. The complainant stated their neighbors at the Subject Location recently moved out of the location and the house was left vacant. The complainant stated the day after the former residents left, there were already transients breaking into the home and living in the vacant home. The

complainant reported seeing three males leaving and entering the property, shed, and home throughout all hours of the day.

10. Upon arrival, officers observed a silver Toyota Corolla bearing Oregon license plates (hereinafter "Subject Vehicle") next to the Subject Location. A male, later identified as **James Victor SMITH** (the defendant), was standing next to the Subject Vehicle with the driver side door opened.

11. Officers contacted **SMITH**. Officers noted the Subject Vehicle was running and **SMITH** had a black cross-body bag on that he kept re-adjusting. Officers observed SMITH's eyes kept drifting between the officer, the Subject Vehicle, and the Subject Location. When asked if he was messing around with the Subject Location, **SMITH** said no. **SMITH** later said that someone was messing with the vacant house. **SMITH** advised the Subject Vehicle was his car. **SMITH** initially provided a false name and date of birth to officers. Officers contacted two other individuals at the Subject Location. **SMITH** was advised officers had reasonable suspicion that **SMITH** was trespassing at the Subject Location.

12. **SMITH** provided his true name. Officers discovered **SMITH** had an arrest warrant for a federal supervised release violation. As Ofc. Estes stood with **SMITH** (and while Ofc. Hills was running records checks), Ofc. Estes observed **SMITH** became agitated and pacing around the vehicle. Ofc. Estes observed **SMITH** take his cross-body bag off and place it inside the Subject Vehicle. The officers placed **SMITH** into custody. Ofc. Hills located the black cross-body bag on the driver's seat of the Subject Vehicle. **SMITH** confirmed the black cross-body bag was his. Ofc. Hills retrieved this bag and searched it incident to arrest. Within the cross-body bag, Ofc. Hills located a large sum of cash, and a Charter Arms Undercover .38 special revolver firearm bearing serial number 707454 loaded with four rounds of ammunition. Ofc. Estes searched **SMITH's**

person and located a pipe used to smoke narcotics, small clear bag of crystal substance, a cell phone, and a wallet with cash.

13. Ofc. Estes advised **SMITH** of his Miranda rights, to which he said he understood his rights. When asked about the firearm, **SMITH** said he found it in the bushes and picked it up because he needed protection. **SMITH** admitted to trying to get rid of the gun after telling his real name because he knew he had a warrant. **SMITH** stated the Subject Vehicle belonged to someone else, but admitted to driving the vehicle that day and that no one else had been in the vehicle that day except him. Officers learned the Subject Vehicle was registered to an individual other than **SMITH.**

14. Ofc. Hills returned to the Subject Vehicle and observed a used methamphetamine pipe in the center console. When **SMITH** was asked if officers were going to find anything else in the vehicle, **SMITH** said, "I got meth in there." When asked how much, **SMITH** responded about a pound. **SMITH** advised the meth was in the front passenger seat inside a black bag.

15. Officers requested the assistance of the PPB NOC unit. PPB Ofc. Verbout responded to the scene and assisted with a tow of the vehicle. **SMITH** initially declined consent to search the Subject Vehicle (stating that he would consent, but it would be under "duress," which officers construed as a denial of consent at that time).

16. Ofc. McDonald interviewed **SMITH** after **SMITH** was transported to the Southeast Precinct. Ofc. McDonald advised **SMITH** of his Miranda rights to which he stated he understood them. **SMITH** advised he was in a car he had borrowed from a friend. **SMITH** said he had won $22,500 at video poker so he bought a bunch of drugs to stay high for a month. **SMITH** advised he was a methamphetamine user and that the methamphetamine in the vehicle was for personal use. **SMITH** said he paid "15" (which Officer McDonald understood to mean $1,500) for a pound

of methamphetamine. **SMITH** signed a written consent form to search the Subject Vehicle. Ofc. McDonald later spoke with **SMITH** again. **SMITH** stated there was information on his phone that proved he won at video parker. **SMITH** stated there were messages about drug usage on his phone also. **SMITH** signed a written consent form to search his phone (recovered from his person). Ofc McDonald saw several text messages on the phone where **SMITH** appeared to be dealing drugs to others. **SMITH** stated the first thing he did with his winnings was buy methamphetamine.

17. Ofc. McDonald processed the seized evidence. The small bag of crystal substance (recovered from **SMITH**'s person) weighed approximately 1.1 gross grams and field-tested positive for methamphetamine. The amount of cash from SMITH's wallet was approximately $240, and the amount from the cross-body bag was approximately $8,300.

18. Ofc. Verbout searched the Subject Vehicle. Ofc. Verbout located six (6) clear bags of crystal substance in a black bag from the front passenger seat. The substance weighed approximately 865 gross grams, and a sample field-tested positive for methamphetamine. Ofc. Verbout also located four digital scales, baggies (packaging material), a black book/apparent drug ledger, and four (4) rounds of various caliber ammunition, and a black wallet with another person's identification. A picture of the seized methamphetamine is included below.



19. I reviewed **SMITH's** NCIC criminal history record and U.S. District Court of Oregon conviction documents. I saw **SMITH** had multiple felony convictions, including:

- Felon in Possession of a Firearm (2013), case number 3:12-cr-00475-MO, sentenced to 67 months imprisonment;
- Failure to Register as a Sex Offender (2018), case number 3:18-cr-00258-MO, sentenced to 21 months imprisonment;
- Felon in Possession of a Firearm (2021), case number 3:21-cr-00045-MO, sentenced to 41 months imprisonment.

20. After reviewing information about the seized revolver, including photographs, a Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agent provided me with a preliminary interstate nexus determination that the seized revolver, Charter Arms Undercover .38 special revolver bearing serial number 707454, traveled in or affected interstate commerce. A picture of the seized firearm is included below.



21. I have been involved in multiple drug investigations where firearms have been recovered and have talked with other investigators who have also been involved in similar investigations where firearms have been recovered. I know from my training and experience that drug traffickers often possess guns as "tools of the trade" in furtherance of their drug trafficking activities for a variety of reasons, to include providing defense against anyone who may attempt to rob the trafficker of their drugs or drug profits.

22. Based on my training and experience I know that methamphetamine is often trafficked across state lines in bulk in one (1) kilogram packages as well as in bindles which are

broken apart and pre-packaged in smaller sizes and weights for sale. I know that items such as scales and packaging material are used to weigh and package methamphetamine after it is broken into smaller quantities, such as ounce-quantities, or even smaller amounts, to be sold.

23. Further, based on my training and experience, I know that a person possessing slightly less than two pounds of methamphetamine, as described above in this affidavit, combined with the other facts described herein, does not possess the methamphetamine for personal use but rather for further distribution. For example, drug users typically only purchase methamphetamine in much smaller amounts, such as 1 to 3 grams at a time.

24. Based on the foregoing, I have probable cause to believe, and I do believe, that **SMITH** has committed the crime of possession with the intent to distribute methamphetamine, in violation of Possession with Intent to Distribute Methamphetamine (500 grams or more of a mixture or substance containing a detectable amount of methamphetamine), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i); and Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g)(1).

25. I therefore request that the Court issue a criminal complaint and arrest warrant for **SMITH.**

//

//

//

//

//

26. Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Cassady Adams. AUSA Adams advised me that in her opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*

Lexie Widmer / Special Agent
Homeland Security Investigations

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 5:20 pm on August 19, 2026.

Jolie A. Russo

HONORABLE JOLIE A. RUSSO
UNITED STATES MAGISTRATE JUDGE